IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JASON BENDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-00469-SRB |
| ) | |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT**

Before this Court is Plaintiff Jason Benda's Motion for Partial Summary Judgment (Doc. #16). For the reasons stated below, the motion is GRANTED.

### I.   Legal Standard

Plaintiff moves for partial summary judgment. A moving party is entitled to summary judgment on part of a claim or defense if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The relevant facts on a summary judgment motion depend on the parties' ability to support their factual positions with citations to the record. First, the movant must identify particular portions of the record that demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); L.R. 56.1(a). Then, the nonmovant must respond by submitting evidentiary materials establishing the existence of a genuine dispute surrounding a material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc); see Fed. R. Civ.

P. 56(e).  Once the parties have satisfied their burdens, the court views the resulting facts in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

**II.     Background**

Because many of Plaintiff's factual assertions are not supported by the parts of the record he cites, the Court excludes them from consideration.  See Fed. R. Civ. P. 56(c)(1), (3); L.R. 56.1(a).  Viewing the remainder of the parties' factual positions in the light most favorable to Defendant, the nonmoving party, the Court finds the relevant facts to be as follows:

Plaintiff worked as a locomotive engineer for Defendant.  Benda Depo. 23 (Doc. #16-2). He began his regularly scheduled run operating Defendant's freight train from the Kansas City area heading east.  Id. at 48, 55, 70.  Aboard the train with him were two crew members, Eric Kramer and Larry Neuweg.  Id. at 63.

As Plaintiff chugged eastbound, he saw an oncoming train on the same track.  Benda Depo. 105-06.  The conductor of the oncoming train, William Johnson, radioed him to stop his train.  Id. at 104; Johnson Depo. at 63 (Doc. #16-2).  Plaintiff immediately acknowledged the radio transmission, applied the emergency brake, and ran out the back door of the locomotive with Kramer and Neuweg.  Benda Depo. 106-07.  The train began to decelerate.  Valencia Decl. (Doc. #29-6).

The three men ran down a catwalk to the edge of the train, intending to jump off before it collided with the westbound train.  Johnson Depo. 64.  Plaintiff hesitated, hoping his train would slow down more.  Benda Depo. 109.  Kramer jumped; Neuweg followed.  Id. at 113.  Plaintiff then jumped.  Id.

2

On the other train, Johnson and his engineer, Robbie Thompson, engaged their own emergency brake and exited the locomotive. Johnson Depo. 64. Thompson jumped off the train, but Johnson decided not to. Id. The trains continued slowing down, eventually stopping a few hundred feet apart. Nystul Decl. ¶ 4 (Doc. #29-5).

Johnson later admitted that before encountering Plaintiff's train, he had driven the train through a red signal. Johnson Depo. 63. Defendant's counsel conceded at oral argument that red train signals, like red stoplights for automobiles, indicate that the operator must come to a complete stop.

Having suffered cuts and abrasions from his fall, Plaintiff sued Defendant. Id. at 75. He then filed the pending motion for partial summary judgment. The Court held oral argument on the motion and now rules as follows.

### III. Discussion

The Amended Complaint asserts three counts against Defendant. Count I alleges that Defendant negligently failed to provide reasonably safe work conditions, in violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60. Plaintiff moves for partial summary judgment on two aspects of this claim.

First, he seeks an order establishing that Defendant's actions were a cause, in whole or in part, of his injuries. FELA makes a railroad liable to its employees for an "injury or death resulting in whole or in part from the negligence" of another railroad employee. 45 U.S.C. § 51. FELA negligence claims require a showing of causation. CSX Transp., Inc. v. McBride, 131 S. Ct. 2630, 2636 (2011); see Eighth Circuit Model Jury Instr. (Civ.) § 15.40 (2014) (labeling causation as the fourth element of a FELA negligence claim).[1]

---

[1] After oral argument, the Court awarded partial summary judgment to Plaintiff on two other elements of this claim: "that 1) Plaintiff was an employee of Defendant at the time of the incident; and 2) that Defendant failed to provide

FELA causation is not determined by the common law rules of proximate causation. McBride, 131 S. Ct. at 2636. Rather, a "relaxed" standard of causation applies, which asks simply whether "employer negligence played any part, **even the slightest**, in producing the injury or death for which damages are sought." Id. (emphasis added). This language is "as broad as could be framed." Id.

Even viewing the evidence most favorably toward Defendant, a reasonable jury would have to conclude that Defendant played a slight role in causing Plaintiff's injuries. Because of Defendant's actions, another train was traveling on the same track in the direction of Plaintiff's train. Plaintiff, along with three other of Defendant's employees, decided to jump off their locomotives solely because they believed a collision was imminent. The record implies no other possibility for why Plaintiff would have jumped from his train. Therefore, Defendant crosses the very low threshold of having played "even the slightest" part in producing Plaintiff's injury. See id. This eliminates any genuine dispute of material facts, so the Court grants partial summary judgment to Plaintiff on the issue of causation on Count I. See Fed. R. Civ. P. 56(a).

Second, Plaintiff seeks a favorable judgment on Defendant's affirmative defense of contributory negligence. See Paul v. Mo. Pac. R.R. Co., 963 F.2d 1058, 1059 (8th Cir. 1992). Generally, an injured railroad employee's contributory negligence reduces his damages proportionally. 45 U.S.C. § 53. However, FELA confers absolute liability on the railroad "in any case where the violation by [the railroad] of any statute enacted for the safety of employees contributed to the injury or death of such employee." Id. The parties agree that Defendant

---

reasonably safe conditions for work in that two trains were proceeding toward each other along the same track" (Doc. #35).

violated a statute, 49 C.F.R. § 240.305(a)(1);[2] the issue is whether it was a "statute enacted for the safety of employees."

Section 240.305(a)(1) prohibits a locomotive engineer from "[o]perat[ing] a locomotive or train past a signal indication, excluding a hand or a radio signal or a switch, that requires a complete stop before passing it." 49 C.F.R. § 240.305(a)(1). This regulation is arranged in the Code of Federal Regulations with the safety standards for locomotive engineer qualification. See id. § 240.1(b) ("This part prescribes minimum Federal safety standards for the eligibility, training, testing, certification and monitoring of all locomotive engineers to whom it applies."). See generally id. subpt. B, ch. II, pt. 240 (entitling the part comprising § 240.305 "Qualification and Certification of Locomotive Engineers"). A person who violates one of these regulations is subject to civil penalties, which are heightened for certain violations that "created an imminent hazard of death or injury to persons, or has caused death or injury." Id. § 240.11(a).

The Federal Railroad Administration ("FRA"), a division of the Department of Transportation, enacted § 240.305(a)(1) pursuant to a statutory chapter whose sole stated purpose "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101; see id. § 20103 (endowing the Secretary of Transportation with rulemaking authority); 49 C.F.R. § 240.305 credits (acknowledging § 20103 as the authority for this rule). FRA explained it was enacting the qualification standards "to minimize the potentially grave risks posed when unqualified people operate trains." Qualifications for Locomotive Engineers, 56 Fed. Reg. 28228-01, 28228 (June 19, 1991). Expounding on these "potentially grave risks," FRA discussed two head-on train collisions and statistics on personal injuries arising under "human-factor caused accidents." Id. at 28232, 28252.

---

[2] This regulation qualifies as a "statute" for purposes of § 53. See 45 U.S.C. § 54a.

5

The text, regulatory context, and agency history of § 240.305(a)(1) establish that it was intended to enhance the safety of railroad employees. First, safety is an obvious reason to make a locomotive stop at a red signal. Red-signal stops may confer other benefits—for example, protecting railroad property—but employee safety is at least one benefit. More generally, minimum competence standards for locomotive engineers—of which § 240.305(a)(1) is part— logically benefit employee safety in some part. FRA promotes this safety by subjecting violators of § 240.305(a)(1) to civil penalties, which are heightened if the violator egregiously harmed or threatened harm to another person. See 49 C.F.R. § 240.11(a).

Second, FRA's authority for enacting the regulation is a statute endeavoring "to promote safety in **every** area of railroad operations." 49 U.S.C. § 20101 (emphasis added). Further, it labeled the regulation a "minimum Federal safety standard[]." 49 C.F.R. § 240.1(b).

Finally, FRA specifically enacted the qualification standards, including § 240.305(a)(1), to prevent hazards like head-on train collisions, which can injure railroad employees. Qualifications for Locomotive Engineers, 56 Fed. Reg. at 28228, 28232, 28252. Therefore, FRA enacted § 240.305(a)(1) for the safety of railroad employees. See also Waggoner v. Ohio Cent. R.R., Inc., No. 2:06-CV-250, 2007 WL 4615788, at *1 (S.D. Ohio Dec. 31, 2007) (holding that § 240.305 was enacted for the safety of employees). But see Bratton v. Kan. City S. Ry. Co., Civil Action No. 13-3016, 2015 WL 403150, at *4-6 (W.D. La. Jan. 28, 2015) (reaching the opposite conclusion); Bowie v. New Orleans Pub. Belt R.R., Civil Action No. 11-755, 2012 WL 4344548, at *4 (E.D. La. Sept. 21, 2012) (same).

Defendant cites a case arguing that "[t]he text of 49 C.F.R. § 240.305 does not evince concern for employee safety any more so than it does concern for the safety of the traveling public or that of the locomotive and its cargo." Bowie, 2012 WL 4344548, at *4. That may be,

6
Case 4:14-cv-00469-SRB   Document 53   Filed 08/18/15   Page 6 of 8

but FELA does not ask for a "statute enacted for the safety of employees <u>only</u>." A law may have multiple purposes. <u>E.g.</u> <u>McKart v. United States</u>, 395 U.S. 185, 195-96 (1969). Further, Congress passed FELA generally to benefit railroad employees. <u>See</u> <u>McBride</u>, 131 S. Ct. at 2636 (describing FELA's goals as "humanitarian" and "remedial"). Insofar as the phrase "enacted for the safety of employees" is ambiguous, the Court will liberally construe it to benefit railroad employees. <u>See</u> <u>id.</u>; <u>Consol. Rail Corp. v. Gottshall</u>, 512 U.S. 532, 542-43 (1994). Thus, the Court cannot read § 240.305(a)(1) to exclude railroad employees from its purview simply because it has other beneficiaries.

Defendant emphasizes another FRA regulation that the Secretary of Transportation specifically stated was enacted to protect employees. 49 C.F.R. § 214.1(a) ("The purpose of this part is to prevent accidents and casualties to employees involved in certain railroad inspection, maintenance and construction activities."). Defendant argues that the Secretary's failure to make a similar declaration in § 240.305 implies that § 240.305 was not enacted for that purpose. <u>See also</u> <u>Bowie</u>, 2012 WL 4344548, at *4. However, FELA does not require statutes' purposes to be explicitly spelled out. Such a declaration might help show that § 240.305 was enacted for employees' benefit, but its absence is not fatal, especially in light of the other evidence of FRA's intent.

Because § 240.305(a)(1) is a "statute enacted for the safety of employees," and because Defendant's employee violated this regulation by driving past a red signal without stopping, contributory negligence cannot diminish Plaintiff's recovery. <u>See</u> 45 U.S.C. § 53. Therefore, Plaintiff is entitled to judgment as a matter of law on Defendant's affirmative defense of contributory negligence. <u>See</u> Fed. R. Civ. P. 56(a).

7
Case 4:14-cv-00469-SRB   Document 53   Filed 08/18/15   Page 7 of 8

**IV. Conclusion**

Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. #16, is GRANTED. The Court enters judgment for Plaintiff on: 1) the fourth element of Count I, that Defendant played any part in causing his injury; and 2) Defendant's affirmative defense of contributory negligence.

                                            /s/ Stephen R. Bough
                                            STEPHEN R. BOUGH
                                            UNITED STATES DISTRICT JUDGE

Date: August 18, 2015
Kansas City, Missouri